IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EUGENE JOHNSON, JR.,<br><br>Defendant. | Case No. 3:21-CR-045 |

## STATEMENT OF FACTS

The United States and the defendant, EUGENE JOHNSON, JR. (hereinafter, "the defendant"), agree that the allegations in the Criminal Information and the following facts are true and correct and that, had the matter gone to trial, the United States would have proven them beyond a reasonable doubt, by competent and admissible evidence:

1. Beginning in or about at least December 2014 and continuing through in or about at least January 2018, in the Eastern District of Virginia and elsewhere, the defendant, with the intent to defraud, did knowingly devise and execute a scheme and artifice to defraud women he met through online dating websites of money and property by falsely affirming a romantic attachment to the women and then falsely claiming to have various pressing financial needs for which he solicited money. The defendant directed the women to send him the solicited funds through interstate wire transfers and cash shipments via private and commercial interstate carriers. The defendant then used these funds to enrich himself and pay personal debts different from those for which he claimed to need money.

2. The defendant used online dating websites, including Plenty of Fish, to meet women residing in various states, including Virginia. Plenty of Fish is a Canadian online dating service based in Vancouver, British Columbia. By using that platform, the defendant caused

1

interstate wire transmissions from, to, and through computers and servers located in various states, including Virginia, to, from, and through Plenty of Fish computers and servers located in Canada. After identifying and contacting women through Plenty of Fish and other online dating websites, the defendant obtained their telephone numbers and, thereafter, communicated with the women primarily by text messages and phone calls.

3. The defendant used various aliases when interacting with women online and by phone and text, including "Tony Taylor" and "Michael Royer." Posing as these individuals, the defendant also falsely claimed to be an active-duty United States Marine from Maine with a son for whom he and his mother shared custody following the death of the child's mother. When purporting to establish a romantic attachment to the women he targeted, the defendant claimed that he wanted to marry each woman, buy a house with her, and raise his son and any children she might have together.

4. Shortly after purportedly establishing romantic relationships with the women, the defendant began asking them to send him money for various pressing financial needs. The defendant's claims varied, but generally involved some form of car, financial, legal, or health problem about which he presented as very emotional. With respect to his purported car troubles, the defendant falsely claimed that his car key had been lost or stolen in a mugging, along with several expensive Christmas gifts. The defendant would then ask the women to send him hundreds of dollars to replace the key and gifts. With respect to his purported financial troubles, the defendant falsely claimed that his bank accounts had been frozen, either due to his own tax troubles with the IRS or financial difficulties that his parents had encountered while traveling internationally with his son. The defendant would then ask the women to send him money for a down payment to the IRS or to help his family return to the United States. Similarly, with respect

2

to his purported legal troubles, the defendant falsely claimed that he had various forms of tax trouble with the IRS for which he either had been or would be arrested. The defendant then asked the women to send him money for bond or a down payment to avoid arrest. Finally, with respect to his purported health problems, the defendant falsely claimed that either he or his child were sick or injured and needed money for medical expenses.

5. To bolster these, claims, the defendant sent the women text messages from different phone numbers in which he posed as various individuals with corroborating information, including his mother, law enforcement and military officers, and healthcare providers.

6. Whatever the purported reasons for which he solicited money, the defendant falsely promised to repay that money from various sources and at various times. Specifically, the defendant falsely told women that he had (1) significant savings he had accrued while on overseas military deployments, (2) lottery pool winnings of approximately $400,000, and (3) a large settlement resulting from the death of his child's mother. The defendant falsely promised to repay victims from those funds after his bank accounts were unfrozen or, in the alternative, after he received a large sum of money that he claimed the government owed him. In truth, the defendant did not then have and was not then entitled to receive any significant sum of money.

7. Believing and relying on the defendant's misrepresentations concerning his identity and financial needs, his romantic interest in them, and his intent and ability to repay them, the women sent the defendant money as directed. Once a woman sent the defendant money to assist with one of his purported needs, the defendant continued to ask that woman for money to meet the other needs. For example, if a woman sent the defendant money to replace the defendant's car key and Christmas gifts, the defendant then sought money to address his tax troubles and his child's illness, claiming that he could not repay her until the former had been resolved. The women sent

3

the defendant money from their own savings and income and, after exhausting those sources, from credit and loan accounts they opened, sometimes at the defendant's direction, to continue assisting the defendant with his purported financial needs. The defendant continued soliciting money from each woman until she exhausted her own resources, refused to send any further sums, or began questioning the veracity of his various claims.

8. The defendant directed the women to send him the requested funds through various means. Initially, the defendant instructed women to wire funds using MoneyGram, Western Union, and other interstate money transfer services using a code word that would authorize him to receive the funds. After these money transfer services began requiring recipients to present identification documents, the defendant started directing women to send cash in packages through FedEx, UPS, and other interstate commercial carriers to a motel in Alton, Maryland. When women residing in Virginia hesitated to send cash shipments, the defendant met them in person at locations in Maryland and Virginia, including the Alton, Maryland hotel and various Dahlgren, Virginia businesses.

9. Through this scheme, the defendant defrauded at least eight (8) women from at least three different states of at least $276,361.65 between at least December 2014 and January 2018. None of these women would have given the defendant money if she had known that he was not who he claimed to be, did not intend to pursue a romantic relationship with her, would not spend the money on the expenses for which she had sent it, and could not and did not intend to repay her as claimed.

10. Once he had received the women's money, the defendant used it to make personal expenditures different from those for which he claimed to need funds. The defendant deposited some of the money into his personal credit union accounts and subsequently used it to pay personal

loans and other expenses. Contrary to his repeated promises, the defendant never repaid any of the money.

11. Among other women, the defendant defrauded A.J., a then-45-year-old woman residing in Virginia Beach, Virginia, within the Eastern District of Virginia. A.J. met the defendant, who she knew as "Tony Taylor," on the Plenty of Fish website in or about August 2017. Their online chat quickly progressed to daily telephone calls. In these calls, the defendant repeatedly told A.J. that he planned to move to Virginia Beach so that they could have a future together. After approximately one month of these daily conversations, the defendant told A.J. that his truck had been stolen and that he needed $200 to $300 to get a new key made. When A.J. agreed to send the defendant the money, he directed her to ship it in cash via FedEx to the Bel Alton Motel in Bel Alton, Maryland. Thereafter, the defendant told A.J. that he was in trouble with the IRS and that his child was ill. The defendant asked A.J. for more money to address his tax troubles and care for his child. A.J. continued to provide the requested funds, both in person and through numerous additional FedEx shipments to the Bel Alton Motel until January 2018.

12. Between August 2017 and January 2018, A.J. sent and provided the defendant a total of at least $8,257.34. A.J. sent most of this money in sixteen (16) separate cash shipments from a FedEx location in Virginia Beach, Virginia to the Bel Alton Motel between August 18, 2017 and January 8, 2018, including a FedEx shipment containing a quantity of U.S. currency that A.J. sent at the defendant's direction on January 8, 2018 bearing tracking number 789264259339. A.J. would not have given the defendant any money if she had known that he was not who he said he was, did not intend to pursue a relationship with her, and would not use the money for the expenses for which he had claimed to need it.

13. After A.J. stopped sending money, the defendant continued to ask her for additional funds. The defendant repeatedly asked A.J. to obtain payday loans, as well as a loan from H&R Block against A.J.'s tax refund. A.J. declined to borrow these funds and ceased communicating with the defendant. The defendant never repaid A.J. as promised.

14. In January 2018, another woman filed a police report with the King George, Virginia Sheriff's Office concerning money she had similarly provided the defendant in their jurisdiction. This woman gave a description of the defendant and his vehicle, as well as the address of the King George hotel at which she had met him. On January 24, 2018, officers located the defendant at that same hotel. When first approached, the defendant claimed to be staying at the hotel for work, but then acknowledged that he was there to meet a woman. After positively identifying the defendant as the subject of the above-described complaint, officers placed him under arrest. The defendant had two cell phones with him when arrested. After being advised of and waiving his *Miranda* rights, the defendant stated that he had traveled to the hotel to "hang out" with a woman he had met on Craigslist. The defendant acknowledged meeting other women at that hotel, including the woman who had made the complaint. The defendant admitted using aliases when meeting women to prevent them from "stalk[ing]" him. The defendant also admitted receiving money from the complaining victim "maybe once" or "a few times." The defendant estimated only receiving "a couple of hundred" dollars for "stuff, gas, [and] food."

15. Forensic examination of defendant's cell phones pursuant to a state search warrant revealed saved contact information for several of the women who he had defrauded, as well as photographs that the defendant had sent to those women.

16. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to

the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

17. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Raj Parekh
Acting United States Attorney

Date: May 21, 2021

By: *Heather Mansfield*
Heather Hart Mansfield
Assistant United States Attorney

By: *Kaitlin G. Cooke*
Kaitlin G. Cooke
Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, EUGENE JOHNSON, JR., and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
EUGENE JOHNSON, JR.

I am the defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Charles Lewis, Esq.
Attorney for EUGENE JOHNSON, JR.